IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUIANA MOUZONE | : CIVIL ACTION |
| | : |
| v. | : NO. 23-19 |
| | : |
| UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA | : |

# MEMORANDUM

**MURPHY, J.**                                                                                   October 31, 2023

      Those seeking a remedy for employment discrimination do not rush directly to court. They file charges with one or more administrative agencies responsible for investigating discrimination — at the federal, state, and even city level if the city has its own discrimination law (e.g., Philadelphia).  This may bring about a negotiated resolution or even government-led litigation.  But typically, it is more of a necessary placeholder that later gives them the right to bring claims in court under the applicable federal, state, or city law.  Here, we face a question that many other judges in this district have addressed: is filing a complaint with Philadelphia's agency a necessary precondition for later bringing claims in court under Philadelphia's discrimination law?  We hold that it is.  Therefore, we deny the plaintiff's motion to amend her pleadings to add such claims.

**I.        Background**

      Procedurally, we are here on a motion for leave to file a second amended complaint (DI 24) that is opposed for futility.  But the underlying issue is whether Ms. Mouzone is barred from advancing claims under the Philadelphia Fair Practices Ordinance (PFPO) because she failed to file a complaint with the Philadelphia Commission on Human Rights (PCHR or, to help

distinguish from Pennsylvania's similarly acronymed commission, PhilaCHR).  Only a few facts are needed.

Ms. Mouzone believes that her former employer, the University of Pennsylvania, discriminated against her because of her disability and wrongfully terminated her.  DI 21.  Around September 9, 2022, she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which was also dual filed with the Pennsylvania Human Relations Commission (PHRC or PennHRC).  DI 24 at 2.  She filed this action on January 24, 2023, alleging discrimination under the Americans with Disabilities Act and wrongful termination.  DI 1.  We held a pretrial conference on May 10, 2023, and discovery has been ongoing.  DI 13.  On September 18, 2023, Ms. Mouzone filed an amended complaint, adding claims under the Pennsylvania Human Relations Act (PHRA).  DI 21.  The next day she moved to file a second amended complaint, this time to add claims under the PFPO.  DI 24.  Ms. Mouzone expected, and received, opposition because she never filed a charge of discrimination with the PhilaCHR.  DI 25.  The University argues that this failure bars any remedy under the PFPO.  *Id.*

Ms. Mouzone's motion relies on the majority of decisions from this district holding that plaintiffs need not have filed charges with the PhilaCHR so long as they have done so with the PennHRC and/or EEOC.  *E.g., Higgins v. MetLife Inc.*, 2023 WL 5309893 (E.D. Pa. Aug. 17, 2023) (thoroughly cataloging the history of the issue in the district).  The University's response relies on a smaller number of decisions from this district holding the opposite.  *E.g., Lee v. Bay, LLC*, 2023 WL 1971209 (E.D. Pa. Feb. 13, 2023).  We are asked to pick a side in this ongoing

debate.[1]

Because this opinion discusses three tiers of discrimination laws and investigative authorities with analogous functions and similar names, here is a brief glossary before we move on to the analysis:

- **Title VII**: The federal employment law that prohibits discrimination.
- **EEOC**: Equal Employment Opportunity Commission, the federal agency that investigates Title VII violations.
- **PHRA**: Pennsylvania Human Relations Act, Pennsylvania's discrimination law, or in a sense Pennsylvania's version of Title VII.
- **PHRC** or **PennHRC**: Pennsylvania Human Relations Commission, the Pennsylvania agency that investigates violations of the PHRA.
- **PFPO**: Philadelphia Fair Practices Ordinance, Philadelphia's discrimination law, or in a sense, Philadelphia's version of Title VII.
- **PCHR** or **PhilaCHR**: Philadelphia Commission on Human Relations, the Philadelphia agency that investigates violations of the PFPO.

## II.   Analysis

Leave to amend should be freely given, but we may deny an amendment that is futile because it would not survive a motion to dismiss. Fed. R. Civ. P. 15(a); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). Our analysis is essentially the same as it would be for a Rule 12(b)(6) motion. *Holst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008). Here, the only question is whether Ms. Mouzone may pursue a claim under the PFPO without having filed a charge with the PhilaCHR.

The decisions that address this question frame it as whether relief is available under the

---

[1] Unversed readers may wonder why the PFPO claims are worth fighting for. There may be more at stake than we appreciate, but in this particular case, Ms. Mouzone explained that she wishes to add claims under the PFPO because of her view that it "provides for uncapped punitive and emotional distress damages, unlike the ADA." DI 24 at 8.

PFPO only where the plaintiff has exhausted her administrative remedies by filing a charge with the PhilaCHR.  Courts have long held that as a matter of "judicial administration . . . no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  The decisions that Ms. Mouzone relies on tend to find that the purposes of an exhaustion requirement are generally satisfied by litigants who file a charge at the EEOC and/or PennHRC, because "[t]hese purposes seem equally likely to be achieved when a complainant files a complaint with the PHRC and/or EEOC as when they file with the Philadelphia Commission."  *Higgins*, 2023 WL 5309893, at *7; *see also Ives v. NHS Hum. Servs., Inc.*, 2016 WL 4039644, at *4 (E.D. Pa. July 28, 2016); *Vandegrift v. City of Philadelphia*, 228 F. Supp. 3d 464, 482 (E.D. Pa. 2017).

And that's probably true.  But, as *Higgins* recognized, the gating question is whether PFPO on its face has a charge-filing requirement as a precondition for bringing a claim in court.[2] *Higgins*, 2023 WL 5309893, at *5.  Several decisions in this district have held that the plain language of the PFPO requires exhaustion of administrative remedies without too much explanation.  *See Lee*, 2023 WL 1971209, at *3 (citing Phila. Code § 9-1112(1)) ("The PFPO imposes an administrative exhaustion that requires potential plaintiffs to file a complaint with

---

[2] We think this phrasing is more apt than the term "exhaustion," at least in part because it avoids confusion with concepts like issue exhaustion and proper exhaustion, and also because, as discussed below, it is more consistent with how the Supreme Court characterizes claim-handling language like that in the PFPO.  *See, e.g., Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019).

the Philadelphia Commission on Human Relations before filing a lawsuit.")[3]; *Smith v. RB Distrib., Inc.*, 498 F. Supp. 3d 645, 665 (E.D. Pa. 2020) (citing Phila. Code § 9-1122) ([P]laintiffs may only exercise a private right of action after invoking the Commission's procedures and receiving notice from the Commission."); *Peterkin v. Prospect Airport Servs., Inc.*, 2021 WL 2400753, at *21 (E.D. Pa. June 11, 2021) (citing Phila. Code § 9-1122(1)) ("The PFPO also requires Ms. Peterkin to obtain notice from the Commission before filing an action in the Court of Common Pleas of Philadelphia County.").  We agree with the result of those decisions, but recently, the decision in *Higgins* put Phila. Code § 9-1122(1) under the microscope and concluded that *Lee*, *Smith*, and *Peterkin* were wrong.  *See also Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 667-68 (E.D. Pa. 2016) ("The PFPO statute does not explicitly indicate that a plaintiff must exhaust her administrative remedies to bring suit.").  So our conclusion bears some explanation.

The debated ordinance provision is under the heading "Private Right of Action" and reads as follows:

> (1) If a complainant invokes the procedures set forth in this Chapter, that person's right of action in the courts of the Commonwealth shall not be foreclosed.  If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant.  ***On receipt of such a notice the complainant may bring an action in the Court of Common Pleas of Philadelphia County*** based on the right to freedom from discrimination granted by this Chapter.
>
> (2) An action under this Section shall be filed within two years after the date of notice from the Commission closing the case.  Any action so filed shall be served on the Commission at the time the complaint is filed in court.  The Commission shall notify the complainant of this requirement.

---

[3] Based on some of the adjacent citations in the opinion, our hunch is that *Lee*'s citation to Phila. Code § 9-1112(1) is a typographical error, and ought to have read § 9-1122(1).

>  (3) The court may grant any relief it deems appropriate, including the right to recover for each violation:
>      (a) Compensatory damages;
>      (b) Punitive damages;
>      (c) Reasonable attorneys' fees;
>      (d) Court costs; and
>      (e) Such other relief, including injunctive relief, as the court may deem appropriate.
>
>  (4) Nothing in this Chapter limits the right of an injured person to recover damages under any other applicable law or legal theory.

Phila. Code § 9-1122 (emphasis added). Section 9-1122 is dispositive of the issue presented here because it defines who may bring suit under the PFPO. This section creates the private right of action, and the action exists under the terms dictated by the PFPO. *Cf. Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (explaining how causes of action are created by statute).[4] And in creating that private right of action, the PFPO defines the action as available only to a person who satisfies the key claim-processing rules: first, the complainant has to file a complaint with the Commission; then, unless there is conciliation, the complainant must receive appropriate notice from the Commission; finally, after notice, but within two years, the complainant may file claims in court under the PFPO.[5] *Id.* If a complainant has not processed

---

[4] So unlike a situation where the courts must inquire as to whether a new law comes along with private right of action, here, the private right of action is spelled out — and the conditions to access it are specified. *See Est. of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999) (explaining that to identify a private remedy, first examine the statute for an express private cause of action).

[5] This process is basically the same as those of the EEOC and PennHRC. But note that the PFPO provides for a different track as well. Phila. Code § 9-1117-19. If the Commission finds probable cause, it may decide to hold a hearing to resolve the charges of the complaint. *Id.* § 9-1117. Unlike Title VII and PHRA, which shunt adjudication to the courts, the PFPO provides for an agency adjudication, final determination, and full slate of remedies. *Id.* § 9-1117-18, 1105. If the Commission goes that route, then the complainant has the right to appeal to any court of competent jurisdiction. *Id.* § 9-1119. But that appeal is not the private right of action created by § 9-1122 that we are talking about here.

her claim in the manner set forth by § 9-1122 — e.g., by not filing a charge, by not waiting for the notice letter, or by waiting more than two years after the notice letter — then she is not a person entitled to the private right of action. Failure to comply with claim-processing rules gives rise to a defense in the ensuing litigation. *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cataloging a variety of claim-processing rules and explaining that "[a] claim-processing rule may be mandatory in the sense that a court must enforce the rule if a party properly raises it" (quotations omitted)).

Examining the same provisions of the PFPO, *Higgins* concluded that they are wholly permissive:

> Nor does the plain text of Section 9-1122(1) require a complainant to invoke the PFPO procedures therein before pursuing PFPO claims in court. That section first provides that, "[i]f a complainant invokes the procedures set forth in [the PFPO], that person's right of action in the courts of the Commonwealth shall not be foreclosed." Phila. Code. § 9-1122(1). Crucially, the text does *not* provide the inverse, namely that a complainant *must* invoke the procedures under the PFPO in order to pursue a right of action in court. Similarly, with respect to obtaining notice from the Philadelphia Commission, the section states only that "[o]n receipt of [notice from the Commission] the complainant may bring an action in the Court of Common Pleas of Philadelphia County." Again, the plain text does *not* state the inverse, namely that a complainant *may not* bring an action in court *without* receipt of notice from the Philadelphia Commission. Without those inverse statements in the plain text, Section 9-1122(1) does not expressly require a complainant to invoke the procedures under the PFPO (by filing a complaint pursuant to Section 9-1112(1)) or receive notice from the Commission before pursuing such claims in court.

*Higgins*, 2023 WL 5309893, at *5. We might agree about the conspicuous absence of "inverse statements" if the first line of the section broadly provided something along the lines of "persons shall have a private right of action in Court of Common Pleas of Philadelphia County based on the right to freedom from discrimination granted by this Chapter." But there is no such statement. Instead, the section lays out the claim-processing rules and then, at the end,

7

concludes with "[o]n receipt of such a notice the complainant may bring an action in the Court of Common Pleas of Philadelphia County based on the right to freedom from discrimination granted by this Chapter." § 9-1122(1). Rather than merely giving complainant some options, § 9-1122 is specifying what a complainant must do to be entitled to a private right of action.[6]

Our conclusion is bolstered by long-standing interpretations of the parallel provisions of Title VII and the PHRA. Starting at the federal level, "[a]s a ***precondition*** to the commencement of a Title VII action in court, a complainant ***must*** first file a charge with the Equal Employment Opportunity Commission (EEOC or Commission)." *Fort Bend*, 139 S. Ct. at 1846 (emphasis added) (citing 42 U.S.C. § 2000e–5(e)(1), (f)(1)). Title VII provides, in relevant part:

> (e) Time for filing charges . . .
>
> (1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency. . . .
>
> (f) Civil action by Commission . . .
>
> (1) . . . . If a charge filed with the Commission pursuant to subsection (b) is

---

[6] We note that applying the logic of *Higgins* to the other claim-processing rules of § 9-1122(1) and (2) is problematic. For example, it would seemingly undermine the requirement in § 9-1122(2) that an action "shall be filed within two years after the date of notice from the Commission closing the case." If there is no requirement to obtain notice from the PhilaCHR in the first place, then there would be no purpose to the time-limitation contemplated in the statute (although perhaps continuing with the *Higgins* approach would import such requirements from whichever other agency was deemed to have satisfied the exhaustion requirement, which would be still further drift away from the language of the ordinance).

8

> dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved ***and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge*** . . . .

§ 2000e–5(e)(1), (f)(1) (emphasis added). Just as in Phila. Code § 9-1122, Title VII creates a cause of action and sets out who can file that action, under what circumstances, and against whom. The Supreme Court explained how the EEOC will investigate and may dismiss the complaint, but "[w]hether or not the EEOC acts on the charge, a complainant is entitled to a right-to-sue notice 180 days after the charge is filed. And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." *Fort Bend*, 139 S. Ct. at 1847 (explaining § 2000e–5(f)(1)). In this way, "Title VII's charge-filing provisions speak to a party's procedural obligations. They require complainants to submit information to the EEOC and to wait a specified period before commencing a civil action. Like kindred provisions . . . Title VII's charge-filing requirement is a processing rule, albeit a mandatory one." *Id.* at 1851 (cleaned up) (holding, ultimately, that these requirements of Title VII are procedural, not jurisdictional). There is no apparent reason to treat Phila. Code § 9-1122 any differently. *See St. Tammany Par., ex rel. Davis v. FEMA*, 556 F.3d 307, 320 (5th Cir. 2009) ("[A]s a matter of statutory interpretation, in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar language." (quotation omitted)); *cf. Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (addressing similarities between the ADA and the Rehabilitation Act).

The PHRA has provisions similar to Title VII and the PFPO:

(c)(1) In cases involving a claim of discrimination, if a complainant invokes the

procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. **On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth** based on the right to freedom from discrimination granted by this act.

(2) An action under this subsection shall be filed within two years after the date of notice from the Commission closing the complaint. Any complaint so filed shall be served on the Commission at the time the complaint is filed in court. The Commission shall notify the complainant of this requirement.

43 Pa. Stat. § 962(c). Given how similar this language is to Title VII, it ought to work the same way. *See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) ("We construe Title VII and the PHRA consistently."); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001) ("The analysis of [Title VII and PHRA] claims is identical."); *Bailey v. Storlazzi*, 729 A.2d 1206, 1211 n.6 (Pa. Super. Ct. 1999) ("The PHRA is generally applied in accordance with Title VII."). And so it does. "To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the [PennHRC] within 180 days of the alleged act of discrimination. If a plaintiff fails to file a timely complaint with the [PennHRC], then he or she is precluded from judicial remedies under the PHRA. The Pennsylvania courts have strictly interpreted this requirement . . . ." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) (cleaned up).[7]

---

[7] *Higgins* concluded that the Pennsylvania Supreme Court imposed an exhaustion requirement onto the PHRA because the statute lacked one. *Higgins*, 2023 WL 5309893, at *4 (discussing *Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 919-20 (Pa. 1989)). *Clay* does not come right out and say that. It is not so clear on its approach, placing mixed reliance both on statutory passages such as § 962(c) as well as the overall structure and purpose of the PHRA. We need not dispute the observations of *Clay* — and certainly not the holding — to conclude that the PHRA's claim-processing requirements ought to be viewed the same way as Title VII's.

*Higgins* and *Vandegrift* also placed some weight on the supposed inconsistency between Phila. Code § 9-1112(4) and § 9-1122(4). *See Higgins*, 2023 WL 5309893, at *6; *Vandegrift*, 228 F. Supp. 3d at 482. The plain language of § 9-1122(1) controls the outcome here,[8] but even considering those other two provisions does not change the result. Those two provisions read as follows:

> [§ 9-1112](4) The Commission shall not accept a complaint from any person who has filed a complaint with the Pennsylvania Human Relations Commission with respect to the same grievance.

> [§ 9-1122](4) Nothing in this Chapter limits the right of an injured person to recover damages under any other applicable law or legal theory.

Both *Higgins* and *Vandegrift* view the former as "prohibit[ing] the complainant from filing a complaint with both the Philadelphia Commission and the Pennsylvania Human Relations Commission." *Vandegrift*, 228 F. Supp. 3d at 482; *Higgins*, 2023 WL 5309893, at *6 (The exclusivity provision "force[s] a complainant to choose between pursuing relief under the PFPO or the PHRA."). And both view the latter provision as in tension with the former because the latter assures that complaints will not be limited in pursuit of other relief, such as under the PHRA. *Id.* But there is no material conflict here because the ordinance is merely telling you the proper procedure: don't file your complaint with the PhilaCHR *after* filing with the PennHRC — file it at the same time or before. § 9-1112(4) (barring the PhilaCHR from accepting a "complaint from any person who **has** filed a complaint with the" PennHRC

---

[8] *See Robert D. Mabe, Inc. v. OptumRx*, 43 F.4th 307, 320 (3d Cir. 2022) ("If the statute's plain language is unambiguous and expresses Congress's intent with sufficient precision, we need not look further" (quotation omitted).); 1 Pa. Stat. § 1921(b) ("When the words of a statute are clear and free from all ambiguity," a court must not "disregard [the words] under the pretext of pursuing its spirit.").

11

(emphasis added)).[9]

Coming back around to this case, here, there is no dispute that Ms. Mouzone did not satisfy the PFPO's claim-processing rules. She never filed a charge with the PhilaCHR. Because she did not satisfy the charge-filing requirement, she is not a person entitled to the private right of action provided by the PFPO. *See* Phila. Code § 9-1122(1). The University correctly relies on Ms. Mouzone's procedural failure (a failure to administratively exhaust, so to speak) in opposing her motion to add claims under the PFPO. For that reason we will deny Ms. Mouzone's motion.

### III. Conclusion

For the reasons stated above, the motion for leave to file a second amended complaint is denied.

---

[9] Indeed, filing with the PhilaCHR triggers notice to PennHRC and allows litigants to later make claims under the PHRA. *See Woodson*, 109 F.3d at 928 n.15 (discussing the now longstanding rule of *Kedra v. Nazareth Hosp.*, 857 F. Supp. 430 (E.D. Pa. 1994) and explaining how "filing with the PhilaCHR constitutes compliance with the PHRA because of the PhilaCHR's statutory obligation to notify the [PennHRC] of the complaints filed with it"); *see also Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, 537 F. Supp. 3d 852, 858 (E.D. Pa. 2020) ("This Court has long held that a plaintiff may exhaust her administrative remedies under the PHRA by filing a discrimination charge with the EEOC or [Phila]CHR, instead of the [Penn]HRC."). If there were some conflict between these provisions, we note there is nothing unusual or troubling about a statute that sets out a general principle but also makes some specific derogations from that principle. *See Cazun v. Att'y Gen.*, 856 F.3d 249, 256 (3d Cir. 2017) ("[T]he specific governs the general in interpreting a statutory scheme.").